FILED & JUDGMENT ENTERED
David E. Weich

Mar 16 2007

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| | ) | Case No. 06-10528 |
| **JAY R. PLUMB** | ) | Chapter 13 |
| **ELEANOR R. PLUMB,** | ) | |
| | ) | |
| Debtors. | ) | |

**ORDER SUSTAINING IN PART AND OVERRULING IN PART
<u>CREDITOR'S OBJECTION TO CONFIRMATION</u>**

This matter is before the court on the Objection to Confirmation of Chapter 13 Plan filed by American Express Travel Related Services Company, Inc. and American Express Centurion Bank (hereinafter collectively referred to as "American Express") and the debtors' response thereto. The Objection to Confirmation presents the following issues: (1) Whether 11 U.S.C. § 1325(b) requires above-median income debtors to calculate projected disposable income based solely on their Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Form B22C, or whether

Schedules I and J should be taken into consideration in making that calculation; (2) Whether the deductions on Lines 24 and 25A of Subpart A of Part IV of Form B22C are limited to allowances for the debtor, the spouse of the debtor, and the dependents of the debtor; (3) Whether the debtors are entitled to the entire Local Standard allowance for the transportation ownership/lease expense when the actual payment for the ownership expense is something less than the Local Standard allowance; and (4) Whether a $289.00 telecommunication expense is an actual, reasonable, and necessary expense of the debtors.

Having considered the pleadings, the arguments of counsel, including that of the Chapter 13 Trustee,[1] the court holds that Form B22C is the starting point for determining projected disposable income for above-median income debtors, but because the income and expense components of projected disposable income in § 1325(b) are forward-looking concepts, debtors must take Schedules I and J into consideration when making that calculation. In considering the three specific objections to the debtors' deductions on Form B22C, the court initially finds that the debtors are required to calculate the deductions on Lines 24 and 25A of Form B22C for their applicable "family size," which would include themselves and their seven children,

---

[1] The Chapter 13 Trustee did not file an objection to the confirmation of the debtors' Chapter 13 Plan. However, he expressed his position regarding the debtors' disposable income at the hearing on this matter without objection by the debtors or American Express.

grandchildren, and great-grandchildren. The fiancée would be excluded from that definition. Next, the court concludes that the debtors appropriately calculated their transportation ownership/lease expense and overrules American Express' objection thereto. Finally, the court finds that the debtors did not meet their burden of demonstrating that their telecommunication expense was an actual, reasonable, and necessary expense and, accordingly, sustains American Express' objection to the telecommunication expense. Consequently, while it appears the debtors are required to modify some of the calculations on their Form B22C, their proposed plan should be confirmed because it proposes to pay a sum that represents projected disposable income as required by § 1325(b)(1)(B).

<u>Background</u>

1.   The debtors filed a Chapter 13 petition on September 1, 2006. Because the case was filed after October 17, 2005, it is subject to the amendments to the Bankruptcy Code contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

2.   The debtors Schedule I indicates they have a combined monthly income of $7,000.00 and does not reflect any dependents. Their Schedule J shows total monthly expenses of $6,319.73, leaving monthly net income of $680.27.

3.   Because the debtors' annualized currently monthly income on line 21 of Form B22C exceeds the applicable median family income for North Carolina, they were required to complete the remaining portions of Form B22C to determine their monthly disposable income under § 1325(b)(2).

4.   On Form B22C the debtors list current monthly income of $8,033.00 and deductions allowed under § 707(b)(2) in the amount of $8,479.57, leaving a monthly disposable income of $-446.57.

5.   At the time the debtors filed their case, their household included ten people, nearly all of whom were children, grandchildren, or great-grandchildren who had been living with the debtors since 2001.  See Plumb Aff.  The one exception was a boyfriend who lived in the household at the time of filing and although he temporarily moved out, he has since moved back in and has become engaged to a family member.  Aside from the debtors, no other household member contributes any regular or meaningful income to the household expenses.  See Line 7 of Form B22C.

6.   The Debtors' Schedule F indicates they owe $94,542.91 to their unsecured creditors.  At the time they filed their petition, the male debtor owed two obligations to American Express of approximately $34,000.00, nearly 36% of the debtors' total unsecured debt.

7.    On behalf of the unsecured creditors, the debtors'
Chapter 13 plan proposes to pay the Chapter 13 Trustee $680.00
per month for sixty months, yielding approximately a 50% payout
to unsecured creditors, or $31,786.00 (the liquidation value of
the debtors' estate), whichever amount is less.

8.    American Express objects to the confirmation of the
debtors' Chapter 13 plan on several bases.    Their primary
argument is that pursuant to § 1325(b)(1)(B), the debtors are
not submitting all of their projected disposable income for
payment to their unsecured creditors under their plan.    Because
this court has not ruled upon the issue of whether projected
disposable income for an above-median income debtor should be
determined by reference solely to Form B22C, Schedules I and J,
or some combination thereof, American Express made alternative
arguments under Schedules I and J and Form B22C.    However, when
arguing this matter before the court, American Express took the
position that the court should solely rely on Form B22C when
determining projected disposable income for above-median income
debtors.

9.    If analyzing Schedules I and J for purposes of
disposable income, American Express argues that confirmation of
the debtors' plan should be denied because it does not take into
consideration that a secured automobile claim paid at the
monthly rate of $566.00 will be paid in full in month twenty-six

of the sixty month Plan. Thus, the creditor argues the debtors' plan payment should increase by $566.00 in month twenty-seven.

10. The court believes that this point -- although a valid one -- is premature. The debtors' plan may require modification to take into consideration additional disposable income due to this or other changes in circumstance. But, the failure to account presently for that future contingency should not render the plan non-confirmable. The proposed plan may be confirmed subject to subsequent modification based on changes in circumstance.

11. If relying on Form B22C to determine projected disposable income for above-median income debtors, American Express asserts that the debtors' monthly disposable income of $-446.57 is understated for several reasons: (1) the debtors rely on a household size of ten in their calculations throughout Form B22C; (2) the debtors have overstated their automobile allowance on Line 28 of Form B22C; and (3) the debtors' telecommunication expense of $289.00 is excessive in that it is not reasonable or necessary.

## Discussion

### Calculation of Projected Disposable Income

12. As an initial matter, the court must determine whether § 1325(b) requires above-median income debtors to determine projected disposable income solely based on Form B22C or whether

Schedules I and J should be taken into consideration in making that calculation. Both the debtors and American Express assert that pursuant to the plain language of the statute, Form B22C should be the sole basis for determining projected disposable income.[2] In contrast, the Chapter 13 Trustee expressed the position that Schedules I and J should be the basis for determining projected disposable income for both above- and below-median income families unless Form B22C reflects more disposable income than Schedules I and J for above-median income families. In that instance, the Trustee argues that debtors would rely on Form B22C to determine projected disposable income. In other words, Schedules I and J would be the floor for determining projected disposable income for above-median income debtors and Form B22C would be the ceiling.

13. Several courts across the country have considered this issue, including Bankruptcy Courts for the Middle and Eastern Districts of North Carolina and the District of South Carolina. See In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006); In re Alexander, 344 B.R. 372 (Bankr. E.D.N.C. 2006); In re Edmunds, 350 B.R. 636 (Bankr. D.S.C. 2006). And, as with other cases interpreting the amendments to the Bankruptcy Code contained in BAPCPA, reasonable jurists have reached opposite conclusions in

---

[2] The court notes the irony of the debtors' position. Although their Form B22C reflects a monthly disposable income of $-446.57, the debtors' plan proposes to pay their unsecured creditors $680.00 per

interpreting the "plain language" of the statute and in
considering the Congressional intent and legislative history for
the reform Act.

14.  In <u>Barr</u>, Form B22C showed that the above-median income
debtor had a monthly disposable income of $-76.47.  However, the
debtor's schedules I and J reflected that in addition to her
plan payments, she had at least $513.00 available each month to
pay unsecured creditors.  The Trustee objected to the debtor's
plan under § 1325(a)(3) on the basis of a lack of good faith due
to her failure to commit any of those excess funds to payment of
unsecured creditors.  The debtor maintained that her ability to
pay is determined solely by § 1325(b)(3) and Form B22C.  <u>See</u>
<u>Barr</u> at 183.

15.  The court in <u>Barr</u> agreed with the debtor and held that
for an above-median income debtor, the debtor's ability to pay
and the determination of whether the debtor's proposed plan has
committed all of the debtor's disposable income, must be made
under § 1325(b) rather than as an element of good faith under §
1325(a)(3).  <u>See</u> <u>id.</u> at 186.  In so concluding, the court
focused on the mandatory nature of § 1325(b)(3), which provides
that for above-median income debtors, "[a]mounts reasonably
necessary to be expended under paragraph (2) shall be determined
in accordance with subparagraphs (A) and (B) of section

---

month, which is the disposable income determined by their Schedules I
and J.

707(b)(2)." See id. at 185.  As to above-median income debtors,
the court found as follows:

> Congress intended to adopt a specific test to be
> rigidly applied rather than a standard to be applied
> according to the facts and circumstances of the case.
> Calculating 'disposable income' for above-median-
> income debtors under new section 1325(b) is now
> separated from a review of Schedules I and J and no
> longer turns on the court's determination of what
> expenses are reasonably necessary for the debtor's
> support.

See id. at 185.  The court in Barr recognized that this strict
application of § 1325(b)(3) may result in an above-median income
debtor who has "excess" income that such debtor is not required
to commit to the payment of unsecured creditors.  However, the
court noted that applying § 1325(b) in this manner could not be
rejected as absurd and maintained that § 1325(b)(3) is
unambiguous in requiring that above-median income debtors
calculate expenses and deductions under § 707(b)(2)(A) and (B)
using Form B22C.  See id.

16.  The Bankruptcy Court in the Eastern District of North
Carolina reached the same result in In re Alexander, 344 B.R.
742 (Bankr. E.D.N.C. 2006).  The Alexander court focused on the
calculation of projected disposable income given the new
definition of disposable income in § 1325(b)(2).  See Alexander
at 748-49.  In that regard, the court began by emphasizing that
the calculation of projected disposable income under §
1325(b)(1)(B) historically has been linked to the definition of

disposable income in § 1325(b)(2).  See id. at 749.  The court
then observed that pre-BAPCPA, projected disposable income was a
"forward looking concept," which required courts to "project"
the debtor's income into the future based on the old definition
of disposable income under § 1325(b)(2) that included "income
which is received by the debtor." See id. at 748.  However, the
court concluded that pursuant to the amendments to § 1325(b)(2)
and addition of the definition of current monthly income under §
101(10A), disposable income is now calculated using historical
data -- the debtor's current monthly income from the six-months
prior to the bankruptcy filing.  See id. at 749.  Thus, the
court held that "in order to arrive at 'projected disposable
income,' one simply takes the calculation mandated by §
1325(b)(2) and does the math."  See id.

     17.  In contrast, in In re Edmunds, 350 B.R. 636 (Bankr.
D.S.C. 2006), the Bankruptcy Court for the District of South
Carolina held that "the statutory construction of § 1325(b),
consistent with legislative intent, allows the Court to consider
actual income and expenses as indicated in Schedules I and J or
by other evidence in considering confirmation." See Edmunds at
649.  In reaching this conclusion, the South Carolina court
separately considered the income and expense components of
projected disposable income under § 1325(b)(1)(B).

18.  With respect to the expense component of projected
disposable income, the court found that the expense allowance
under § 1325(b)(3) is a forward-looking concept, which should
not strictly be determined by the calculations in Form B22C.
See id. at 644.  The court explained that this approach does not
modify the manner in which debtors complete the income or
expense portions of Form B22C but rather "this approach is
merely the application of the Means Test viewed through the lens
of § 1325(b) and Congress's instruction that the courts should
'project' disposable income, based upon the disposable income to
be received" during a debtor's plan.  See id.

19.  In applying the law to the cases before it, the
Edmunds court considered the two broad categories of expenses
under § 707(b) -- applicable expenses and actual expenses.  With
respect to applicable expenses, the court held that the debtors
are entitled to take the full amount of the allowed deduction of
applicable expenses.  See id.  However, the court found that an
expense is not "applicable" for purposes of determining
projected disposable income if a debtor is surrendering the
property in its plan.  See id.  In addition, the court found
that the debtor bears the burden of demonstrating that the
second category of expenses -- "actual" expenses -- are "actual,
reasonable, and necessary expenses and therefore Debtors'
expenses should be considered in light of Debtors' Schedules J

and other relevant evidence." See id. at 645 (citation omitted). Finally, with respect to secured debts, the court found that debtors may only deduct their average monthly payments on secured debts to the extent the debtors treat those creditors as secured creditors scheduled for payment in their Chapter 13 plans. See id.

20. Similarly, in considering the income component of projected disposable income, the Edmunds court held that it is also a forward-looking concept and, therefore, should not be limited to a debtor's pre-petition income average under Form B22C. See id. at 646. Specifically, the court held that in order "[t]o give meaning to every word of the statute, the statute directs that debtors must determine projected disposable income in light of the income 'expected to be received in the applicable commitment period beginning on the date that the first payment is due under the plan.'" See id. at 647 (citing 11 U.S.C. § 1325(b)(1)(B)).

21. Finally, in considering whether a plan has been proposed in good faith as required by § 1325(a)(3), the court rejected the holdings of Barr and Alexander that a strict application of the Means Test satisfies a debtor's burden of demonstrating good faith in proposing their Chapter 13 plans. See id. at 648. Rather, the Edmunds court held that the factors set out in Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir.

1982), for determining whether a plan has been proposed in good
faith, are still relevant -- even if a debtor's plan satisfies §
1325(b).  See id.  The court explained that "[n]othing in the
legislative history of § 102(h), of Pub. L. 108-9) 2005, clearly
indicates that Congress intended to change the existing practice
in this Circuit of considering a debtor's actual financial
situation at the time of filing or the percentage of proposed
repayment as elements of good faith."  See id. (citation
omitted).

22.  This court is persuaded to follow the reasoning in
Edmunds because that court's legal analysis seems appropriate
(although, the court must admit that the same could be said for
Barr and Alexander).  As a practical matter, however, the
Edmunds analysis reaches the actual funds that debtors have
available to pay creditors.  The reality of most debtor's
finances is that they are dynamic and subject to change for any
number of reasons.  To shoehorn that financial reality into a
static Form B22C would result in many cases in a required plan
payment schedule that does not reflect the debtor's actual
ability to pay their creditors.  For example, in this case the
debtors' Form B22C shows they have no ability to pay unsecured
creditors when, in fact, they have income available and have
proposed to pay $680.00 per month.  Therefore, this court finds
that although debtors must use Form B22C as the starting point

for determining projected disposable income, they must also take into consideration Schedules I and J when making that calculation. Because projected disposable income is a forward-looking concept, calculating it in this way will best determine debtors' actual ability to pay their creditors. And this court believes that the debtors' actual ability to pay their creditors is the appropriate standard of their "good faith" and that the Edmunds approach best realizes that.

23. Having determined that Form B22C is the starting point for determining projected disposable income for above-median income debtors, the court will consider the objections to confirmation of American Express related to the specific deductions taken by the debtors on Form B22C in determining their monthly disposable income.

Household

24. On Line 16 of Form B22C, the debtors indicate they have a household size of 10, resulting in an applicable median family income of $94,785.00.[3] The debtors have a current monthly income of $8,033.00, from which they subtracted deductions of $8,479.57 pursuant to § 707(b)(2), resulting in monthly disposable income under § 1325(b)(2) of $-446.57.

---

[3] For the time period during which the debtors filed their petition, the applicable median family income for a household size of 2 would have been $43,532.00. Thus, assuming the debtors listed a household size of 2, as American Express argues they should have, their annualized current monthly income of $96,396.00 for § 1325(b)(4) still would have been more than the applicable median family income.

25.  Subpart A of Part IV of Form B22C addresses those specific deductions from current monthly income pursuant to § 707(b)(2)(A)(ii) for "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses."  The debtors' large household size is reflected in at least two places on Subpart A of Form B22C and significantly affects the calculation of their monthly disposable income.  For example, the debtors deduct $2,842.00 for their Allowable Living Expenses on Line 24, which is the National Standard allowance for ten people.  The National Standard allowance for two people is $1,306.00 -- a difference of $1,536.00.  At Line 25A, the debtors deduct $444.00 for housing and utilities, non-mortgage expenses, which is the Local Standard allowance for four or more people.  The Local Standard allowance for two people is $328.00 -- a difference of $116.00.

26.  American Express argues that the § 707(b)(2)(A)(ii) expenses are limited, with minor exception, to those of the debtor, the spouse of the debtor, and the dependents of the debtor and that the household size has no relevance to the determination of those expenses.  American Express' argument begins with § 1325(b)(2), which defines "disposable income" as current monthly income "less amounts reasonably necessary to be

expended . . . for the maintenance or support of the debtor or a
dependent of the debtor . . . ."    See 11 U.S.C. §
1325(b)(2)(A)(i).    Thus, American Express contends that the
debtors' Form B22C expenses are overstated by $1,652.00
($1,536.00 plus $116.00) and, consequently, the debtors' monthly
disposable income should increase from $-446.57 to $1,205.43.

27.  In contrast, the debtors argue that limiting the
definition of household in the manner sought by American Express
ignores the dictionary meaning of "household" as well as the
plain language of the statute.    According to the debtors, "[h]ad
Congress intended the definition of a household to be limited to
the Debtors and their dependents it would have said so in the
statute.    Congress presumably knows the difference between the
definition of household members and dependents."    Brief for
debtors at 7.    Thus, the debtors contend that their household
includes all of the individuals living under their roof --
whether or not they are family members.

28.  Both parties focus their argument on the definition of
the term "household."    However, the debtors household size is
inconsequential for purposes of this case because the only place
in which it factors into the debtors' calculations is on Line 16
of Form B22C, and, as previously noted, whether the debtors'
household size is 2 or 10, their annualized current monthly
income is more than the applicable median family income.    See

note 3.   Thus, the court need not decide what Congress means by "household size" on Line 16 of Form B22C.   However, what is specifically at issue in this case is what number Congress intends above-median income debtors to use for purposes of completing Lines 24 and 25A of Subpart A of Part IV of Form B22C, which requires debtors to enter the National Standard allowance for Allowable Living Expenses and the Local Standard allowance for housing and utilities; non-mortgage expenses, respectively, based on the applicable "family size."

29.   The beginning point for determining this issue is § 1325(b)(2)(A)(i), which provides that, for purposes of § 1325(b)(1)(B), disposable income means "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the <u>debtor or a dependent of the debtor</u> . . . ."   <u>See</u> 11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added).   For above-median income debtors, "amounts reasonably necessary to be expended" is determined by § 707(b)(2).   <u>See</u> 11 U.S.C. § 1325(b)(3).

30.   Section 707(b)(2)(A)(ii), in turn, outlines which expenses debtors should deduct from their current monthly income in order to calculate their monthly disposable income under § 1325(b)(2) and limits those deductions to expenses for "<u>the</u> <u>debtor, the dependents of the debtor, and the spouse of the</u> <u>debtor in a joint case, if the spouse is not otherwise a</u>

<u>dependent</u>".   <u>See</u>  11  U.S.C.  §  707(b)(2)(a)(ii)(I)  (emphasis added).

31.  In  contrast,  Lines  24  and  25A  of  Form  B22C specifically instruct debtors to calculate the relevant expenses based  on  applicable  "family  size"  rather  than  number  of dependents,  which  clearly  conflicts  with  the  language  in  the statute.   However,  in  this  instance,  the  court  defers  to  Form B22C because of the specificity of the instructions on the form and because  it  recognizes  the  actual  living  situation  of  many families.   Moreover,  to  calculate  the  Allowable  Living  Expense and housing and utilities; non-mortgage expense based on family size  is  appropriate  given  the  fact  that  Form  B22C  requires debtors  to  take  into  consideration  regular  contributions  to their  household  expenses  on  Line  7  when  calculating  current monthly income.   It  would  be  patently  unfair  to  require  debtors to  list  financial  contributions  to  the  household  expenses  for purposes  of  determining  current  monthly  income  while  not allowing  them  to  take  the  higher  National  and  Local  Standard deduction for living expenses.

32.  In  addition,  it  is  clear  from  Form  B22C  that  Congress did not intend to limit the "family size" on Lines 24 and 25A to the  dependents  of  the  debtors.   Congress  specifically  so  limited the  expense  deductions  on  Line  37  of  Form  B22C.   Had  Congress

meant to limit the deductions on Lines 24 and 25A to dependents, it would have done so.

33. The court must also consider whether Congress intended for household size and family size to be synonomous on Form B22C. Section 707(b)(2)(A)(ii)(II) refers to household member and family member alternatively. Specifically, § 707(b)(2)(A)(ii)(II) provides as follows:

> the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

See 11 U.S.C. § 707(b)(2)(A)(ii)(II).

34. Similarly, Line 40 of Subpart B of Form B22C refers to expense deductions for "continued contribution to the care of household or family members." Thus, it appears Congress and the drafters of Form B22C meant two separate things by "household size" and "family size." And Congress essentially defined family in the parenthetical in § 707(b)(2)(A)(ii)(II) as including "parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent." See 11 U.S.C. § 707(b)(2)(A)(ii)(II).

35. Consequently, for purposes of this case, the court finds that the debtors are required to calculate the expenses on Lines 24 and 25A for their applicable family size. Based on the definition of family in § 707(b)(2)(A)(ii)(II), the debtors' applicable family size would include themselves and the seven children, grandchildren, and great-grandchildren described in their affidavit but would exclude the fiancée. See Plumb aff. The debtors should amend their Form B22C accordingly.

Transportation Expense

36. Form B22C addresses transportation expenses in two components:  one for vehicle operation/public transportation expense and another for ownership/lease expense.  The expense at issue in this case is the ownership/lease expense.  Form B22C requires debtors to reduce the Local Standard allowance for ownership/lease expense by the average monthly loan payment amount, which is also reported on a separate line of the Form B22C for deductions of secured debt under § 707(b)(2)(a)(iii).

37. Accordingly, on Line 28a of Form B22C, the debtors list the applicable Local Standard allowance of $471.00.  On Line 28b they deduct from that amount $235.83, which is the average monthly loan payment amount for Vehicle 1, resulting in a deduction in the amount of $235.17.  The debtors also deduct $235.83 on Line 47c, which is the deduction for their future

payment on this secured claim. Thus, the debtors' total deduction for Vehicle 1 is $471.00.

38. In its Objection to Confirmation, American Express argues that "the Debtors are not entitled to the entire local standard allowance amount of $471.00 when the actual payment for the ownership expense, as averaged over the sixty-month period of the plan, is $235.83." <u>See</u> Brief for American Express at ¶ 37. In support of its argument, American Express references the Internal Revenue Service, 5.15.1 Financial Analysis Handbook which provides that "'[t]axpayers will be allowed the local standard or the amount actually paid, <u>whichever is less</u>.'" <u>See</u> Brief for American Express at ¶ 38. Thus, the creditor concludes "the Debtors' <u>actual</u> payment is $235.83, which is less than the local standard allowance of $471.00. The Debtors should only be allowed to deduct $235.83, which deduction will result in an increase in the B22C disposable income of $235.17 . . . . "[4] <u>See</u> Brief for American Express at ¶ 39.

39. The debtors insist that American Express' argument is flawed for several reasons. The court agrees with the debtors and overrules American Express' objection to the debtors' transportation ownership/lease expense.

---

[4] As stated previously, the actual transportation ownership/lease expense deduction taken by the debtor is $235.17. Although not stated expressly by American Express, the court assumes that the creditor bases its argument that the debtors should only be allowed to deduct $235.83 on the fact that the debtors take the deduction of $235.83 on

40.  The primary basis for American Express' objection is
the Internal Revenue Service, 5.15.1 Financial Analysis
Handbook, which provides that taxpayers are allowed the lesser
of the Local Standard or the amount actually paid.  In ruling on
a similar issue in In re Prince, Case No. 06-10328C-7G, 2006 WL
3501281 (Bankr. M.D.N.C. Nov. 30, 2006), the Bankruptcy Court
for the Middle District of North Carolina declined to consider
the rules and practices found in the Internal Revenue Manual
when determining whether a debtor may claim an ownership
allowance under the Local Standards if the debtor's vehicle is
debt free.  Specifically, Judge Stocks found that "[t]he
relevant language of section 707(b)(2)(A)(ii)(I), in specifying
the methodology for determining a debtor's expenses under that
provision, refers only to the 'National Standards' and the
'Local Standards' and does not refer to or purport to include
the numerous rules and practices specified through the Internal
Revenue Manual."  See Prince at *2.  Judge Stocks continued as
follows:

> Apart from the plain meaning of the statutory
> language, it appears that the reference to the
> National and Local Standards in section
> 707(b)(2)(A)(ii)(I) was intended to provide a set of
> standard allowances that could be easily and uniformly
> applied by the courts in administering the means test.
> To read section 707(b)(2)(A)(ii)(I) as permitting the
> courts to comb through the Internal Revenue Manual in
> order to pick and choose provisions to apply in a
> given case injects great uncertainty into the process

Line 47c for payment of secured debt for this same vehicle
($235.83(Line 47c deduction) + 235.17 (Line 28a deduction) = $471.00).

of determining a debtor's expenses for purposes of the
means test.

See id. at *3.

41. This court agrees with the reasoning in Prince and
similarly declines to consider the rules and practices specified
in the Internal Revenue Service, 5.15.1 Financial Analaysis
Handbook in determining whether the debtors are entitled to the
entire Local Standard allowance or should be restricted to a
deduction in the amount of the debtors actual debt payment.
Section 707(b)(2)(A)(ii)(I) specifically provides that the
debtor's monthly expenses "shall be" the applicable monthly
expense amounts "specified under the National Standards and
Local Standards . . . ." See 11 U.S.C. § 707(b)(2)(A)(ii)(I).
Moreover, Line 28 of Form B22C instructs debtors to enter the
amount of the IRS Transportation Standards, Ownership Costs,
First Car and deduct from that amount the Average Monthly
Payment for debts secured by that vehicle to determine the net
ownership/lease expense.  That is exactly what the debtors did.
Accordingly, the court finds that the debtors have appropriately
calculated their transportation ownership/lease expense for
Vehicle 1 in the manner required by § 707(b)(2)(A)(ii)(I) and
Form B22C and overrules American Express' objection thereto.

Telecommunication Expense

42. Finally, American Express objects to the debtors'
$289.00 telecommunication expense listed on Line 37 of Form B22C

as excessive.  Absent proof of the necessity of this expense, American Express argues all or a portion of the $289.00 should be included as disposable income.

43.  The debtors simply assert that their telecommunication expense is both reasonable and necessary for a household of ten people without putting forth any evidence to support their position.

44.  The telecommunication expense falls under the category of "actual" expenses incurred by debtors, which are specified as "Other Necessary Expenses" on Form B22C, a category for which the IRS does not set out specific dollar allowances.  Rather, § 707(b)(2)(a)(ii)(I) allows debtors to deduct their actual expenses under this category.

45.  Line 37 of Form B22C limits telecommunication expenses to those of the debtors or their dependents.  Because Form B22C specifically so limits the deduction for telecommunication expenses, the debtors bear the burden of demonstrating that these expenses are actual, reasonable, and necessary expenses for themselves (rather than for a household of ten people).  See 11 U.S.C. § 1325(b)(3) (indicating that disposable income is calculated by deducting "reasonably necessary" expenses from the debtor's current monthly income); see also Edmunds at 645 (holding that debtors have the burden of proving that "Other Necessary Expenses" on Form B22C are actual, reasonable, and

necessary expenses and that these expenses should be considered in light of Schedule J and other relevant evidence). The debtors have failed to meet that burden. Therefore, the court sustains the objection of American Express to the debtors' telecommunication expense.

Conclusion

46. The court will overrule and sustain American Express' objections to the debtors' Form B22C calculations based upon the above analysis. But, this case is unusual in that the debtors' proposed payment was greater than the product of Form B22C -- even as modified. Therefore, notwithstanding all of the modifications required to Form B22C by this order, it appears that the debtors' proposed plan should be confirmed because it proposes to pay a sum that represents the debtors' actual projected disposable income as required by § 1325(b)(1)(B).

It is therefore **ORDERED** that:

1. American Express' objections to the debtors' calculations of Form B22C are sustained in part and overruled in part;

2. American Express' objection to confirmation of the debtors' plan is overruled;

3. The debtors' proposed Chapter 13 plan is confirmed subject to modification if required; and

4.    The Chapter 13 Trustee is directed to submit a confirmation order consistent with this Order.

This Order has been signed electronically.     United States Bankruptcy Court
The Judge's signature and court's seal
appear at the top of the Order.